[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife was married to the defendant husband on March 13, 1982, in Groton, Connecticut. She has resided in the state of Connecticut continuously for at least one year prior to the commencement of this action. CT Page 10367
No children were born to the wife during the marriage. However, the husband has three children from a previous marriage. These children lived with him and the plaintiff during most of the marriage. The plaintiff claims that she was the primary care provider for the children. From the evidence presented, it appears to the Court that the biological mother had little to do with the rearing of the children. The plaintiff fed and prepared the children for school and participated in the children's school activities.
The plaintiff is 34 years of age and in apparent good health. She cannot, however, lift heavy items and has been given a 5 percent permanent partial disability of the back, as a result of an automobile accident. This disability, however, does not appear to hinder her ability to work. She has an associate's degree as a paralegal, although she has never been so employed. During the marriage, she worked for her husband. Presently, she is employed as a health aide, working 40 hours per week at $7 per hour. She has been so employed since August 1991.
The plaintiff claims that problems started in the marriage in July 1990. She claims her husband had an affair at this time with a woman named Susan Martin. She also claims that her husband is a demanding person, neglectful father and a "lousy" boss. She does not feel that she is responsible, in any way, for the breakdown of the marriage.
In 1987, both of the parties were involved in a motor vehicle accident. The wife netted $7,800 and the husband about $95,000. The settlement checks were received in September 1992.
The defendant is 45 years old. He attended college for four years, although he never received a degree. Although he is able to work, the automobile accident has left him in constant pain. He has a 25 percent partial disability of the lower back and a 15 percent partial disability of the upper neck area. His activities are restricted and he testified it takes approximately two to two-and-a-half hours each morning for him to ready himself for the day's activities. He utilizes pain management as a method of dealing with pain daily pain.
CT Page 10368 The defendant has a substantial amount of real estate, some of which is in the process of foreclosure. To a great degree, the collapse of the real estate market had much to do with the defendant's present financial situation.
When he married, the defendant had approximately $150,000 in real estate equity. Since then, he has sold the majority of those properties and reinvested his money in other properties.
The defendant's own real estate firm is under the Beazley banner. He claims to have little or no income in 1992 from his real estate business. In fact, his financial affidavit shows a weekly loss of $2,661. The Court is not convinced as to the accuracy of that figure. Nor is the Court persuaded by his testimony relative to his borrowing money from his sister and his girlfriend. It is inconceivable to the Court that the amount he borrowed would be handled strictly in cash. The method of repayment also is nonconvincing. His credibility has been badly tarnished by his testimony relative to these transactions. Further, his failure to list his girlfriend's "debt" in Exhibit 3, the bank credit application, and his explanation as to this failure adds to his credibility problem.
He claims that the marriage broke down in June or July of 1991, and that the primary cause was his wife's handling of his children. She became very militaristic and inflexible. He admitted that more often than not, during the course of the marriage, she handled the children well. Yet toward the end, her relationship with the children took a different direction which eventually was the primary cause of the breakdown.
Having considered all of the evidence, the Court makes the following findings:
A. The husband's behavior contributed to the breakdown more than the wife's relationship with the children, although the Court does conclude that neither party is blameless.
B. The husband's income is misstated, given the loss he claims on a weekly basis, and the financial statement he filed with a lending institution. CT Page 10369
C. The wife is being supported to some degree by her live-in boyfriend.
D. The wife has a greater capacity to earn. She has not utilized her abilities nor has she attempted to do so.
Finally, having considered as well the statutory criteria, the Court further finds and orders as follows:
1. The marriage has broken down irretrievably, there is no prospect for reconciliation and a decree of dissolution may enter.
2. The husband shall pay to the wife the sum of $1 per year as periodic alimony. Said alimony shall terminate upon the happening of the first of the following events:
a. death of either party
b. remarriage of the wife
c. December 1, 1997
Alimony shall be nonmodifiable as to term.
3. The husband shall pay to the wife as a lump sum alimony the sum of $18,000. Said sum to be paid as follows:
a. $6,000 — June 1, 1993
b. $6,000 — December 1, 1993
c. $6,000 — June 1, 1994
Said lump sum alimony shall be non-dischargeable in bankruptcy.
4. Each of the parties shall be responsible for his or her own liabilities and attorney's fees.
5. Personal property shall be divided in accordance with the agreement of the parties.
CT Page 10370 Mihalakos, J.